UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN MYLES,<br><br>    Plaintiff,<br><br>    v.<br><br>ALLIEDBARTON SECURITY SERVICES, LLC, et al.,<br><br>    Defendants. | Case No. 12-cv-05761-JD<br><br>**ORDER DENYING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 54 |

Named plaintiff Joan Myles filed this employment suit in November 2012 seeking relief on behalf of herself and a putative class of security officers employed by defendant AlliedBarton Security Services. *See* Compl., ECF No. 1. About four months before trial was scheduled to begin, Myles and AlliedBarton submitted a proposed class settlement for the Court's review. ECF No. 54. The Court advised the parties that the proposed settlement would not be approved, and promised to issue a written order explaining why. ECF No. 60. The Court now does so.

**I. BACKGROUND**

As alleged in the operative complaint, Joan Myles worked for AlliedBarton as a security officer until September 2012. Second Am. Compl. ("SAC") at ¶ 10, ECF No. 51. She asserts that AlliedBarton violated sections 201 and 202 of the California Labor Code by not paying her and other security officers their accrued vacation pay at the end of each assignment, and claims "waiting time" penalties under section 203, penalties for inaccurate wage statements under section 226, and penalties under California's Private Attorney General Act ("PAGA," codified at sections 2698 *et seq.*). SAC ¶¶ 26-49; Setareh Decl. ¶ 4, ECF No. 54-2.

The proposed settlement envisions a putative class comprised of "all former non-exempt security officers employed by AlliedBarton Security Services, LP in California [after November 9,

1   2009] except any employee who has individually adjudicated his/her claims [after November 9,

2   2009]." Proposed Settlement ¶ 7, ECF No. 54-3. The settlement contemplates that the members

3   of the proposed class would give up their rights to sue AlliedBarton for:

> any and all wage and hour claims, rights, demands, liabilities and causes of action for actual damages, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief that were or could have been pleaded based on the facts alleged in the operative Complaint.

*Id.* ¶ 80. The settlement also provides that the "release includes all claims arising under the Federal Fair Labor Standards Act, the California Labor Code, the Industrial Welfare Commission Wage Orders, unfair competition law and other applicable state, federal and local laws related to compensation, wage statements, interest and/or penalties." *Id.* In addition, the members of the putative class would "forever agree that they shall not accept wages, punitive damages, penalties of any nature, attorneys' fees and costs, or any other relief from any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against [AlliedBarton and related parties]." *Id.* ¶ 81.

In exchange for these broad releases and other consideration from the putative class, AlliedBarton will pay out a maximum of $1,750,000. *Id.* ¶ 58. To be clear, the putative class members are not getting $1.75 million distributed among them in simple equal shares. The parties propose to deduct first substantial payments for plaintiffs' attorney's fees and costs, a so-called "enhancement" award for Myles, costs of administering the settlement and payment of penalties to the California Labor Workforce and Development Agency. *Id.* ¶ 60. These deductions reduce the $1.75 million to a "Net Settlement Amount" that will be significantly less. On top of that, the parties propose that AlliedBarton be subject to only a 50% minimum payout of the net amount. *Id.* at ¶ 61. The unclaimed amount above the 50% guaranteed distribution reverts to AlliedBarton. *Id.*

There is no guarantee that all the members of the proposed class would see any of this money. To get paid, putative class members must mail in a claim form within forty-five days of notice from the settlement administrator. *Id.* ¶ 50. Each member who submits a valid claim will receive a sum equal to the Net Settlement Amount divided by the total number of class members

1   (not just those who made claims), plus a small share of the statutory penalty under PAGA. *Id.*, Ex.
2   A at 2; *id.* ¶ 73. If the total amount distributed to the class members is less than half the Net
3   Settlement Amount, the per-member payment can be increased by up to a factor of two. *Id.* ¶ 61.
4   If the amount distributed to class members is still less than half the Net Settlement Amount, funds
5   will be paid to the Police Activities League and the California Narcotics Officers Association until
6   the 50% threshold is reached. *Id.* Even those who do not submit a valid claim form will be
7   subject to the releases, however, unless they affirmatively exclude themselves from the settlement
8   within the same forty-five day period. *Id.* ¶ 51(c).

9   For fees, plaintiffs' counsel requests up to 30% of the gross settlement amount (that is, up
10  to $525,000), rather than fees based on amounts actually paid to the class members they purport to
11  represent. *Id.* ¶ 68. They request up to $27,500 in costs. *Id.* The parties also ask for an
12  enhancement of $7,500 to be awarded to Myles, purportedly for her services to the class members.
13  *Id.* ¶ 69. They estimate that the costs of administering the settlement will amount to $50,000,
14  again to be taken out of the gross settlement amount before distribution to potential class
15  members. *Id.* ¶ 70. Finally, they estimate that the payment to the California Labor and Workforce
16  Development Agency (necessary when a PAGA claim is at issue) will be $625. *Id.* ¶ 73.

17  If these requested sums are paid out, the Net Settlement Amount available for payment to
18  class members will be $1,137,500. The minimum recovery for each class member who opts in
19  will be that amount divided by the estimated 11,500 class members, or about $98.91.

20  **II. DISCUSSION**

21  "In a class action, substantial justice may require the court to do more than encourage
22  settlement." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1327 (9th Cir. 1999). The
23  reason is straightforward: in a class action, "[t]he class members are not at the table; class counsel
24  and counsel for the defendants are." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The
25  Ninth Circuit has cautioned that "[t]he absence of individual clients controlling the litigation for
26  their own benefit creates opportunities for collusive arrangements in which defendants can pay the
27  attorneys for the plaintiff class enough money to induce them to settle the class action for too little
28  benefit to the class (or too much benefit to the attorneys, if the claim is weak but the risks to the

3

1  defendants high).” *Zucker*, 192 F.3d at 1327.  As a result, “there are real dangers in the

2  negotiation of class action settlements of compromising the interests of class members for reasons

3  other than a realistic assessment of usual settlement considerations such as the strength of their

4  legal claims, the desire for immediate rather than delayed relief, and the costs of litigation.”

5  *Staton*, 327 F.3d at 959.

6        In federal courts, the solution to this potential conflict of interest is judicial oversight over

7  class action settlements.  *See Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir.

8  2002).  Embodying the idea that fairness in class action settlements “ha[s] need the guard of

9  dragon watch with unenchanted eye,” John Milton, *Comus* 394-95, the Federal Rules of Civil

10 Procedure require district courts to scrutinize proposed settlements and approve them only if they

11 are "fair, reasonable, and adequate."  Fed. R. Civ. Pro. 23(e)(2).  To determine whether a

12 settlement agreement meets the Rule 23(e) standards, a district court considers several factors,

13 including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of

14 further litigation; the risk of maintaining class action status throughout the trial; the amount

15 offered in settlement; the extent of discovery completed, and the stage of the proceedings; the

16 experience and views of counsel; the presence of a governmental participant; and the reaction of

17 the class members to the proposed settlement."  *Staton*, 327 F.3d at 959.

18       The Court finds that settlement proposed here falls short of being fair, reasonable, or

19 adequate.  Because the Court can reject but not modify the agreement, *Hanlon v. Chrysler Corp.*,

20 150 F.3d 1011, 1026 (9th Cir. 1998), the ball is back in the parties' court:  they are welcome to try

21 their hand at reaching a new settlement, or to proceed to trial.

22 **A. Scope of Release**

23       Under the proposed settlement, the scope of the claims that the class members would

24 release with respect to AlliedBarton is impermissibly broad.  This Court has previously explained

25 that "[w]hile a release need not slavishly echo the claims in the complaint, it must appropriately

26 track and not exceed them."  *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, slip op. at 5-6

27 (N.D. Cal. Nov. 10, 2014), ECF No. 96.  It is true that "[a] settlement agreement may preclude a

28 party from bringing a related claim in the future even though the claim was not presented and

4

1  might not have been presentable in the class action" where the released claim is "based on the
2  identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint*
3  *Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotations omitted).  But *Hesse* describes the
4  maximum potential scope of the release; it does not mean that any release that broad deserves
5  approval.  Here, the parties have not shown good reasons for extending the bounds of the release
6  beyond the claims actually at issue in the case.  In addition, some of the language of the release,
7  quoted above, sweeps even further than *Hesse* allows.  Proposed Settlement ¶¶ 80-81, ECF No.
8  54-3.

9     The parties' attempt to extinguish claims under the federal Fair Labor Standards Act
10  (FLSA) raises additional issues.  The FLSA prohibits traditional class actions and authorizes only
11  an opt-in collective action.  29 U.S.C. 216(b).  But the proposed settlement here operates as an
12  opt-out settlement.  That does not work for the compromise or release of FLSA claims.  *See*
13  *Kakani v. Oracle Corp.*, No. 06-cv-06493-WHA, 2007 WL 1793774, at *7 (N.D. Cal. Jun. 19,
14  2007); *Tijero v. Aaron Bros., Inc.*, No. 10-cv-01089-SBA, 2013 WL 60464, at *8 (N.D. Cal. Jan.
15  2, 2013).

16     Furthermore, the settlement appears to extinguish the rights of all the putative class
17  members, including those who do not get paid anything and may not even have received notice.
18  *Id.* ¶ 51(c).  This in effect sets AlliedBarton's liability (beyond its minimum payout of half the Net
19  Settlement Amount) on a "claims made" basis but applies the release universally to the putative
20  class.  That is not a tenable or fair approach.  *See Kakani,* 2007 WL 1793774, at *5 (rejecting
21  settlement because "[the defendant's] liability would be limited on a 'claims-made' basis …. But
22  the release is not imposed on a 'claims-made' basis.").

23     The possibility that the proposed settlement may cause class members to lose their rights
24  without notice is particularly troubling.  It is true that the proposed release applies only to
25  "Settlement Class Members," Proposed Settlement ¶ 80, ECF No. 54-3, which is defined to
26  include all "Class Members who have not excluded themselves from the Settlement" and "who
27  have received written Notice," *id.* ¶ 33.  But elsewhere, the settlement provides that "Class
28  Members who fail to submit a timely request for exclusion in the manner described in this

paragraph shall be bound by all terms of the Settlement and the Judgment if the Settlement is approved by the Court." *Id.* ¶ 51(c). A Class Member remains a Class Member, and therefore subject to the release, even if the notice sent to them is returned as undeliverable or they otherwise do not get notice. *Id.* ¶¶ 7, 47-50. This is not cricket. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999) ("before an absent class member's right of action was extinguishable due process require[s] that the member 'receive notice plus an opportunity to be heard and participate in the litigation,' and ...'at a minimum ... an absent plaintiff [must] be provided with an opportunity to remove himself from the class.'"); *Kakani*, 2007 WL 1793774, at *5 (rejecting proposed settlement because "[w]orkers who fail to receive the notice (due to changes in address or other delivery problems) or who put it aside unread due to the press of other matters or who simply do not prepare and file a claim on the tight timetable in the notice would lose all rights."); *Stokes*, No. 12-cv-05527-JD, slip op. at 6-7 (same); *Tijero*, 2013 WL 60464 at *9-10 (same); *Lounibos v. Keypoint Gov't Solutions Inc.*, Case No. 12-cv-00636-JST, 2013 WL 3752965, at *6 (N.D. Cal. Jul. 12, 2013) (same).

The Court will not approve a proposed settlement in which the scope of the release differs dramatically from the scope of liability and the class members to be compensated unless the parties provide good reasons for that departure. No such reasons have been provided here, and that, standing alone, is enough to torpedo the settlement.

**B. Settlement Amount**

The parties have also not sufficiently explained why the proposed settlement amount for each class member is fair and reasonable given that it is quite small in comparison to the plaintiffs' potential recovery at trial. Although "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," the Ninth Circuit has approved of district courts comparing the settlement amount to "estimates of the maximum amount of damages recoverable in a successful litigation," and the Court is skeptical that the proposed settlement can survive the comparison. *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000).

6

Myles states that the maximum potential recovery here is $18,975,000. Mot. at 21, ECF No. 54. Even if the proposed settlement purported to give the entire $1,750,000 gross settlement amount to the class, which it does not, that amount is only about one-eleventh the claimed maximum potential recovery.

The parties have not offered an adequate explanation for this steep discounting. They try to justify it by pointing to the usual list of potential risks associated with litigation: the Court may not certify the class alleged in the complaint, AlliedBarton may prevail on its liability defenses, or it might appeal, delaying payment. *Id.* Maybe so. But although the parties cite cases in support of using these factors, they do not provide enough information about the facts of this case to allow the Court to determine whether the steep discount in plaintiffs' recovery is justified. This may be because the parties have not yet conducted sufficient discovery and have not fully vetted the true risks and benefits of the claims. *See* Pl.'s Reply in Supp. of Appl. to Continue Trial Date at 1-2, ECF No. 64 (arguing that the parties agreed not to proceed with discovery while the settlement agreement was pending). And scant discovery is yet another reason to deny approval, for district courts are instructed to consider "the extent of discovery completed" in determining whether a proposed settlement passes muster. *Staton*, 327 F.3d at 959.

**C. Notice**

Although these defects, standing alone, would be enough to deny approval, the Court also sees problems in the proposed notice. The most serious is that class members only have forty-five days to object or opt out from the time the notice is mailed -- meaning they have less than forty-five days from the time they actually receive the notice.[1] Proposed Settlement ¶ 51, ECF No. 54-3. Their window to respond could be even shorter if the original address turns out to be wrong: in that case, the settlement administrator will try to find an updated address and re-send the notice, but the time for objecting or opting out is not correspondingly increased. *Id.* ¶ 47.

---

[1] The portion of the proposed settlement covering objections and exclusions actually requires objections and supporting briefs to be mailed "no later than forty (45) calendar days" after the notice is mailed. *Id.* ¶ 51. Because the proposed settlement elsewhere refers to a forty-five day period, the Court assumes the reference to forty days is a typographical error.

7

This time frame is too short. *See Tijero*, 2013 WL 60464, at *10. If the parties seek preliminary approval of a new settlement, they should allocate a minimum of seventy-five days to opt out or object. This period should be increased if a notice has to be re-sent.

Other problems with the proposed notice exist. Some of the provisions in the proposed notice appear not to be consistent with the proposed settlement: the notice states that Myles may be entitled to an enhancement award of up to $10,000, *see* Notice at 1, 4, ECF No. 54-4, while the settlement appears to provide for only a $7,500 "service payment," *see* Proposed Settlement ¶ 69, ECF No. 54-3. As another example, the claim form included with the notice lists the class member's "estimated minimum gross settlement," *see* Notice at 1, ECF No. 54-4, a number liable to be misleading, since under the settlement the class member would only be entitled to a share of the Net Settlement Amount, which would be far smaller. Other problems are apparent, and the parties should carefully re-draft the proposed notices if they choose to revise the settlement.

### D. Attorneys' Fees and Class Representative Enhancement

The Court also has concerns about the proposed maximum attorneys' fees and the enhancement money for Myles. When attorneys' fees are paid out of a common fund, "the class's lawyers occupy a position adversarial to the interests of their clients" and "the district court has a special duty to protect the interests of the class." *Staton*, 327 F.3d 938, 959 (9th Cir. 2003). The reason for the conflict of interest is simple:

> The defendant … is interested only in the bottom line: how much the settlement will cost him. And class counsel, as "economic man," presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only money that class counsel, as distinct from the members of the class, get to keep. The optimal settlement from the joint standpoint of class counsel and defendant, assuming they are self-interested, is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel. Ordinarily -- in this case dramatically -- individual members of the class have such a small stake in the outcome of the class action that they have no incentive to monitor the settlement negotiations or challenge the terms agreed upon by class counsel and the defendant.

*Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) (Posner, J.).

With respect to attorneys' fees, our circuit has established a non-binding "benchmark" guideline of twenty-five percent of the settlement amount, and if a district court awards a higher

amount it must explain why. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (finding a district court abused its discretion by awarding thirty percent of the settlement amount). Given what appears to be minimal litigation effort to date and the manifest problems with the proposed settlement, the Court sees no reason to allow plaintiff's attorneys to recover more than the benchmark -- if anything, a lower amount would likely be appropriate. Moreover, any such sum should not be based on the full gross settlement amount, for much of that -- like the fees paid to the settlement administrator -- does not constitute a benefit to the class members. *See Redman*, 768 F.3d at 629-630. And the parties must provide a good reason for any "clear-sailing clause" whereby AlliedBarton agrees not to object to attorneys' fees (as currently provided for in paragraph 68 of the proposed settlement) because such clauses are a telltale sign of collusion. Proposed Settlement ¶ 68, ECF No. 54-3 ("AlliedBarton will not object to Plaintiff's Counsel's requests as set forth in this paragraph."); *Redman*, 768 F.3d at 637.

As this Court has stated before, our circuit has expressed disapproval of class representative enhancements whereby named plaintiffs are paid more than ordinary class members. *See Stokes*, No. 12-cv-05527-JD, slip op. at 8-9; *see also Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163-64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but … awarding them should not become routine practice"). This is because "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Staton*, 327 F.3d at 975; *see also Kakani*, 2007 WL 1793774 at * 10. Absent a particularized showing of expenses incurred or injury suffered by Myles (above and beyond those of the other proposed class members), an enhancement award is inappropriate.

### III. CONCLUSION

For the reasons given above, the Court denies preliminary approval of the settlement. Because the proposed settlement fails to meet a preliminary fairness determination, the Court need not reach plaintiff's request for conditional certification of a class for settlement. *See Kakani*,

2007 WL 1793774; *Fraser v. Asus Computer Int'l*, No. 12-cv-00652-WHA, 2012 WL 6680142 (N.D. Cal. Dec. 21, 2012).  If the parties intend to submit another proposed settlement, they are directed to review the Procedural Guidance for Class Action Settlements, which is available on the Court's website.  *See* Procedural Guidelines for Class Action Settlements, http://cand.uscourts.gov/ClassActionSettlementGuidance (last visited Nov. 12, 2014).  That guide should be used to improve the next approval request and the proposed notice to the class, with recommendations to provide a website that has links to the notice, motions, and any other important documents in the case, as well as proposed language informing class members how to access the Court's docket.

**IT IS SO ORDERED**.

Dated: November 12, 2014

_____
JAMES DONATO
United States District Judge